UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
UNITED STATES OF AMERICA,          )
                                   )
            v.                     )   CRIMINAL ACTION
                                   )   NO. 04-10015-MLW
OSAYI OJO,                         )
        Defendant,                 )
_____)


ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION
May 28, 2004

**SWARTWOOD, M.J.**

    I.   Nature Of The Offense And The Government's Motion

    On February 2, 1998, a Criminal Complaint was filed charging Osayi Ojo ("Mr. Ojo"), with knowingly and with intent to defraud, using two unauthorized access devices and by such conduct, obtaining money in excess of $1,000, in violation of 18 U.S.C. § 1029(a)(2).  In June 2003, Mr. Ojo was arrested in connection with this Complaint while entering Canada from Nigeria.

    On December 29, 2003, Mr. Ojo appeared before me and I advised him of his right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §3142(f)(2)(A)(risk of flight).

    I then scheduled a consolidated probable cause/detention hearing for January 8, 2004 and at that hearing, Mr. Ojo waived his

right to a probable cause hearing and assented to an Order of Detention, but reserved his right to a detention hearing in the future. Thereafter, on January 9, 2004, I issue an Order of Detention.

On January 21, 2004, an Indictment was returned charging Mr. Ojo under his real name and under four aliases with two counts of access device fraud, in violation of 18 U.S.C. §1029(a)2).

In May 2004, Mr. Ojo's counsel requested a hearing in connection with Mr. Ojo's reserved right to a hearing on the Government's motion for detention. I granted Mr. Ojo's request for a detention hearing and that hearing was held on May 26, 2004. At this hearing, no testimony was offered by the Government or Mr. Ojo. Since Mr. Ojo has been indicted for the offenses charged in the Criminal Complaint, the Indictment is sufficient for a finding of probable cause for those offenses. Therefore, the only facts relevant to the issue of detention are Mr. Ojo's history and characteristics.

### IV.   The Bail Reform Act

#### A.   Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18

U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the

Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142(f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on

release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

    (1)   the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    2.   the weight of the evidence against the person;

    3.   the history and characteristics of the person, including:

        a.   the person's character, physical and mental condition, family ties, employment, financial

>   > resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>   b.  whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

### B. Government's Burden

The United States has moved for a detention pursuant to 18 U.S.C. §3142(f)(2)(A)(risk of flight). The Government must prove by a preponderance of the evidence that Mr. Ojo poses a risk of flight and that there are no conditions or combination of conditions that would reasonably assure his appearance in Court if he were released.

III.   Discussion of Whether Detention is Warranted

   A.   Mr. Ojo's History and Characteristics

Mr. Ojo was born in Nigeria on November 27, 1957, where he lived until he entered the United States in 1984 as a legal permanent resident.

Mr. Ojo graduated from High School in Nigeria and received a bachelors degree in Criminal Justice from Tennessee State University in 1987.

Mr. Ojo told Pretrial Services that from January 2003 until June 2003, he was in Nigeria and before visiting Nigeria that he lived in an apartment in Brooklyn, New York from 1999 until January 2000.  Prior to that address, Mr. Ojo stated that he lived with his cousin in Brooklyn, New York for approximately seven years.

The Government alleges that Mr. Ojo left New York and the United States when he discovered that Postal Inspectors were looking for him to arrest him in connection with this Complaint and that he returned to Nigeria in 1999 and then traveled to Canada in June 2003, where he was arrested.

Mr. Ojo's parents are deceased.  Mr. Ojo has seven siblings, who all reside in Nigeria.

Mr. Ojo was married in 1983 in Tennessee and divorced in 1987. There were no children of this marriage.  Mr. Ojo has a two year old daughter who is being raised by Mr. Ojo's family in Nigeria.

From 1993 to 1995, Mr. Ojo was employed by the Human Resources Department for the City of New York as a Case Manager. After leaving that employment, Mr. Ojo drove a cab in New York.

On May 23, 1995, Mr. Ojo was charged in the White Plains, New York Court with possession of a forged instrument for which, on July 14, 1995, he pled guilty and received three years probation. In 1995, Mr. Ojo was charged with transaction card fraud and theft in Durham, North Carolina and on March 8, 1996, pled guilty to the lesser offense of financial card fraud for which he received forty-five days confinement, six months probation, court costs and $1,000 restitution.

Mr. Ojo has been charged with the following offenses, but I have no information with respect to the disposition of these offenses:

| DATE | PLACE | OFFENSE |
|---|---|---|
| 2/25/88 | Atlanta, GA | Fleeing/attempting to allude officer/forgery - first degree |
| 9/28/90 | Gallatin, TN | Accessory to attempt to commit theft over $1,000, use of false name |
| 11/18/95 | Raleigh, N.C. | Possession and use of stolen credit cards, use of false name |

Mr. Ojo has been incarcerated at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island from December 23, 2003 to the present. While at that facility, Mr. Ojo has maintained a positive adjustment, has received no disciplinary reports, is

currently participating in the detainee workers program as library clerk, participates in a typing class, and attends religious services. Def's Ex. A.

### C. Nature of the Offense; Weight of the Evidence; and Risk of Flight

#### 1. Nature of the Offense

Mr. Ojo is charged with an offense which provides for a period of incarceration of between 10 to 16 months according to Mr. Ojo's counsel and between 21 to 27 months according to the Government. If Mr. Ojo is found guilty of the offenses charged in this Indictment, he faces almost certain deportation following completion of a sentence.

Therefore, the offense charged against Mr. Ojo is serious.

#### 2. Weight of the Evidence

Bearing in mind that Mr. Ojo is presumed innocent, the Court must nevertheless consider the weight of the evidence against him. The Indictment itself provides probable cause for the offenses charged against Mr. Ojo.

Therefore, the weight of the evidence is sufficient for a finding of probable cause.

#### 3. Whether Mr. Ojo Poses A Risk Of Flight

Mr. Ojo has very few ties to the United States and has substantial family ties to Nigeria where seven siblings and his child reside. Additionally, there is no question that Mr. Ojo left the United States to go to Nigeria and that he was arrested not

returning to the United States, but rather when he entered Canada. It is not clear that Mr. Ojo ever intended to ever return to the United States. I further find that since the underlying Complaint in this case issued, Mr. Ojo has been in Nigeria for more than the six months between January and June 2003 which he maintained to Pre-Trial Services. I base this finding on the fact that Mr. Ojo has a 2 year old child living in Nigeria. If convicted of the offenses charged in this Indictment, Mr. Ojo faces almost certain deportation. Consequently, if Mr. Ojo were released, he would have no incentive to stay in the United States even though he may have served a substantial portion of any potential sentence he may receive. Therefore, considering the totality of these circumstances, I find by a preponderance of the evidence that Mr. Ojo poses a risk of flight and that there are no conditions or combination of conditions that I can impose that will assure his appearance in this Court as directed.

## IV. Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

    1. That Mr. Ojo be committed to the custody of the Attorney General, or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.   That Mr. Ojo be afforded a reasonable opportunity for private consultation with counsel; and

3.   On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Ojo is detained and confined shall deliver Mr. Ojo to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

### RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE